**Opinion filed April 20, 2023**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-22-00033-CR

_____

**GARY DEAN CAMPBELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CR48731**

## M E M O R A N D U M   O P I N I O N

In a three-count reindictment, Appellant, Gary Dean Campbell, was charged with the offenses of theft of service by deception in the amount of $300,000 or more (Count One), securing execution of a document by deception affecting one's pecuniary interest in the amount of $30,000 or more but less than $150,000 (Count Two), and securing execution of a document by deception affecting one's pecuniary interest in the amount of $300,000 or more (Count Three). *See* TEX. PENAL CODE ANN. §§ 31.04(a)(1), (e)(7), 32.46(a)(1), (b)(5), (7) (West Supp. 2022). The indicted

offenses originate from a scheme that involved several corporations and a series of forged documents that Appellant allegedly used to procure services from various individuals and business entities that, although performed by them, were never paid by Appellant.

While this case was pending in the trial court, Appellant filed a motion to suppress and contended, among other things, that (1) the "seizure" and subsequent "search" of documents recovered by law enforcement personnel was unlawful and (2) a confidentiality agreement conferred upon him a reasonable expectation of privacy in the documents. After a hearing, the trial court denied Appellant's motion; it later signed Findings of Fact and Conclusions of Law.

Appellant subsequently entered an *Alford*[1] plea to each charged offense. Based on Appellant's pleas, the trial court convicted Appellant of the charged offenses and, in accordance with the parties' negotiated plea agreement, sentenced Appellant to ten years' imprisonment for each count; all sentences were ordered to be served concurrently with a sentence previously imposed against Appellant in a related case.[2]

In his sole issue on appeal, Appellant challenges the trial court's denial of his motion to suppress. We affirm.[3]

## I. *Factual Background*

Because of the limited scope of Appellant's complaint on appeal, we only recite the facts that are pertinent to the issue that we must address.

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[2] Appellant was convicted in a related case of the same offense as charged in Count Two of the reindictment in this case. Appellant appealed his conviction, and we affirmed. *See Campbell v. State*, No. 11-19-00345-CR, 2021 WL 4599812, at *1 (Tex. App.—Eastland Oct. 7, 2021, no pet.) (mem. op., not designated for publication).

[3] By our count, five attorneys were independently appointed to represent Appellant in the trial court below. Ultimately, Appellant chose to proceed pro se with the assistance of standby counsel. Appellant is represented by court-appointed counsel on appeal.

Appellant's motion to suppress was presented to the trial court on September 23, 2021. Officer Stephanie Wilson was the only witness presented by the State at the suppression hearing; Appellant did not testify or present any witnesses on his behalf. Officer Wilson was a financial crimes investigator with the Midland Police Department when allegations of fraud and theft were raised against Appellant; she was assigned to investigate these allegations. During the course of her investigation, Officer Wilson attempted to locate Appellant. At the time, Appellant had an open felony warrant. Officer Wilson later contacted Susie Niemeyer, Appellant's sister, and arranged to meet with Niemeyer to discuss her knowledge of Appellant's whereabouts.

Officer Wilson and Niemeyer met at the home of Niemeyer's son. When they met, Officer Wilson explained to Niemeyer why law enforcement was searching for Appellant. Niemeyer then told Officer Wilson that she possessed several boxes that Appellant had left with her and that she did not want. According to Officer Wilson, Niemeyer had advised Appellant that she no longer wanted the boxes and she requested that he return and retrieve them; however, he never did. Before their meeting concluded, Niemeyer asked Officer Wilson if she would take the boxes, otherwise she intended to throw them away. Officer Wilson testified that she did not persuade or coerce Niemeyer to part with the boxes. Therefore, as suggested, Officer Wilson took the boxes.

Upon returning to her office, Officer Wilson began reviewing the contents of the boxes. She eventually determined that certain documents found inside the boxes pertained to Appellant and the charges that she was investigating. Officer Wilson testified that she did not secure a search warrant before she examined the contents of the boxes because she considered the boxes, and their contents, to be abandoned property.

3

## II. *Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Martinez*, 348 S.W.3d at 922–23. We afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when a trial court's fact findings are based on an evaluation of credibility and demeanor. *Brodnex*, 485 S.W.3d at 436; *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same deference is afforded the trial court with respect to its rulings that concern the application of the law to questions of fact and to mixed questions of law and fact if the resolution of those questions turns on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *see also Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018).

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma*, 543 S.W.3d at 190; *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)).

When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence adduced at the suppression hearing, when viewed in the light most favorable to the trial court's *ruling*, supports those findings. *State v.*

*Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In that context, we review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision, regardless of whether the trial court granted or denied the motion. *Wade*, 422 S.W.3d at 666 (citing *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). Therefore, we will uphold the trial court's *ruling* if it is supported by the record, if it is reasonable in light of the evidence presented, and if it is correct under any applicable legal theory. *State v. Lujan*, 634 S.W.3d 862, 865 (Tex. Crim. App. 2021); *Lerma*, 543 S.W.3d at 190.

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). In reviewing the trial court's ruling, we may not perform our own fact-finding mission; nor may we substitute our judgment for that of the factfinder. *Lujan*, 634 S.W.3d at 865.

### III. *Analysis*

On appeal, Appellant argues that the trial court abused its discretion when it denied his motion to suppress. Specifically, Appellant contends that the trial court erroneously concluded that (1) the documents Officer Wilson obtained from Niemeyer and later reviewed were not "seized" but, instead, were abandoned and (2) Appellant did not have an expectation of privacy in the documents. Because these arguments are interrelated, we will address them together.

#### A. *The Fourth Amendment*

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *see*

*Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010); *Wiede*, 214 S.W.3d at 24. A claim that the actions of law enforcement violated a person's Fourth Amendment rights may be based on a privacy theory—where it is claimed that a person's expectation of privacy was breached. *State v. Rodriguez*, 521 S.W.3d 1, 9 (Tex. Crim. App. 2017); *Ford v. State*, 477 S.W.3d 321, 328 (Tex. Crim. App. 2015). Under a privacy theory, a person has standing to assert, but also the burden to show, that a search or seizure was unreasonable because (1) he has a subjective expectation of privacy in the place or object that is searched, and (2) society recognizes that expectation as reasonable or legitimate. *Ford*, 477 S.W.3d at 328; *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014).

B. *Abandonment/Expectation of Privacy*

No person can reasonably expect to retain a privacy interest in property that he abandons. *State v. Martinez*, 570 S.W.3d 278, 286 (Tex. Crim. App. 2019) (citing *Matthews v. State*, 431 S.W.3d 596, 608 (Tex. Crim. App. 2014)). Thus, a person who voluntarily abandons property relinquishes any claimed expectation of privacy in it and lacks standing to challenge the reasonableness of the seizure and/or search of the abandoned property. *Id.* (citing *Swearingen v. State*, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003)).

The question of abandonment focuses on whether the person voluntarily discarded, left behind, or relinquished his interest in the property such that he no longer retained a reasonable expectation of privacy in it at the time the seizure and/or search of the property occurred. *Id.* (citing *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997)). Abandonment is determined by a person's intent, which may be inferred from words spoken, acts done, and other objective facts and relevant circumstances. *Id.* To constitute abandonment, a person must have (1) intended to abandon the property and (2) freely decided to do so. *Id.* (citing *Matthews*, 431 S.W.3d at 609; *Comer v. State*, 754 S.W.2d 656, 659 (Tex. Crim. App. 1986)). In the

6

absence of police misconduct, no search or seizure occurs when the police take possession of abandoned property. *Id.* (citing *McDuff*, 939 S.W.2d at 616).

Appellant contends that a confidentiality agreement executed by Niemeyer and West-Tex Red Wolf Joint Venture, L.L.C. (Red Wolf) created and preserved an expectation of privacy for him in the documents that were contained in the boxes that Niemeyer gave to Officer Wilson. The State argues that Appellant possessed no reasonable expectation of privacy in the documents because (1) the confidentiality agreement was between Niemeyer and a corporate entity (Red Wolf) and (2) Appellant left the documents with Niemeyer and did not intend to retrieve them; therefore, he abandoned the documents. We agree with the State.

When Officer Wilson met with Niemeyer and explained the reasons for contacting her, Niemeyer told Officer Wilson that Appellant had left several boxes with her which Niemeyer no longer wanted. Appellant never retrieved, and made no effort to retrieve, these boxes, despite Niemeyer's requests for him to do so. Pursuant to Niemeyer's suggestion, and to spare her the inconvenience of having to discard the boxes, Officer Wilson took them. According to Officer Wilson, she did not coerce or force Niemeyer into relinquishing possession of the boxes. Officer Wilson testified that she did not believe it would be necessary to secure a search warrant before she examined the contents of the boxes because she considered the boxes, and their contents, to be abandoned property. Ultimately, Officer Wilson's review of the boxes' contents uncovered documentation that was related to the charges concerning Appellant that she was investigating.

In its Findings of Fact and Conclusions of Law, the trial found and concluded, among other things, that: (1) Appellant had intended to abandon the boxes and their contents before Officer Wilson received them from Niemeyer; (2) Officer Wilson had an objectively reasonable basis to believe that Appellant had abandoned the boxes and their contents; (3) Appellant had no reasonable expectation of privacy in

7

the boxes or their contents; (4) no police misconduct occurred in obtaining the boxes and their contents; (5) because of Appellant's abandonment of the boxes and their contents, Niemeyer had actual and apparent authority to release them to Officer Wilson; and (6) there was no "seizure" of the boxes and their contents. Nevertheless, Appellant contends that the trial court's findings are deficient because the trial court failed to specifically address the amount of time that had passed from when Niemeyer received the boxes until (1) she asked Appellant to retrieve them and (2) she gave the boxes to Officer Wilson after Appellant had refused to retrieve them.

The confidentiality agreement between Niemeyer and Red Wolf was executed on March 3, 2016. Officer Wilson obtained the boxes and related documents from Niemeyer on January 6, 2017. Thus, if Niemeyer had received the documents on or before the date that this agreement was executed, she would have maintained possession of them for at least ten months before the documents were given to Officer Wilson. Of course, it is conceivable that the documents were in Niemeyer's possession for less than ten months. Irrespective of the duration by which Niemeyer possessed the documents, the undisputed evidence shows that Appellant made no attempt to retrieve the documents during the time that Niemeyer possessed them. As such, with the passage of time, regardless of the duration, the trial court could infer and conclude, as it did, that Appellant had abandoned the documents.

Contrary to Appellant's contentions, the record supports, and we defer to, the trial court's findings and conclusions. In light of the trial court's determinations, with which we agree, we conclude that Appellant relinquished any privacy interest that he could have purportedly claimed in the documents when he left the boxes that contained the documents with Niemeyer and did not retrieve them. Consequently, the documents were neither seized nor searched within the meaning of the Fourth Amendment. Further, there is no evidence that the trial court neglected to consider the "passage of time" argument that Appellant now asserts. Niemeyer asked

Appellant to retrieve the boxes that contained the documents, but he refused to do so. One may certainly infer, as the trial court did, Appellant's intent to abandon the documents in this instance based on his conduct, inaction, and all other relevant circumstances. As such, even if we assume that any expectation of privacy in the documents ever attached to Appellant, his abandonment of the documents negates any privacy interest assertion that he has advanced on appeal.

C. *Confidentiality Agreement*

Finally, Appellant argues that he possesses an expectation of privacy in the documents that is derived from the confidentiality agreement that was executed by Niemeyer and Red Wolf. However, Appellant is not a signatory to this agreement. In response, the State contends that Appellant's argument fails because Officer Wilson, in obtaining the documents, acted in good faith under the circumstances. Although we have concluded that a "seizure" of the boxes and related documents within the meaning of the Fourth Amendment did not occur, even if we assumed that it did, the Fourth Amendment only protects persons from *unreasonable* seizures. The reasonableness element of a Fourth Amendment analysis does not require that law enforcement officers be factually correct in their assessments; circumstances must allow for officers to make mistakes. *See Illinois v. Rodriguez*, 497 U.S. 177, 184–86 (1990).

Here, Officer Wilson, in light of what Niemeyer expressed, could have reasonably believed that Appellant had abandoned the boxes and their contents before she accepted Niemeyer's invitation to take them. Moreover, and importantly, Officer Wilson was unaware, and Niemeyer never told her, that a confidentiality agreement existed. In fact, there is no evidence that Niemeyer knew that the boxes contained documents purportedly covered by the confidentiality agreement. As such, Officer Wilson could not have been expected to consider how the

confidentiality agreement might have affected anyone's claimed interests. Based on these circumstances, we cannot say that Officer Wilson's actions were unreasonable.

At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of witness credibility and the weight to be afforded a witness's testimony. *Lerma*, 543 S.W.3d at 190; *Maxwell*, 73 S.W.3d at 281. Because the trial court was required to resolve any conflicts in the evidence and was thus at liberty to believe or to disbelieve all or part of a witness's testimony, we defer to its conclusions regarding witness credibility. *Ross*, 32 S.W.3d at 855; *Johnson*, 803 S.W.2d at 287.

Consistent with the applicable standards of review, we have reviewed the evidence in the light most favorable to the trial court's ruling. Because we will not substitute our judgment for that of the trial court, we defer to its findings, which here are supported by the record. Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to suppress.

Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgments of the trial court.


W. STACY TROTTER

JUSTICE

April 20, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.