In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00421-CR
_____

THE STATE OF TEXAS, Appellant

V.

CHRISTOPHER LAMAR STEWART, Appellee

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 12-08-08546 CR

MEMORANDUM OPINION

In this appeal, the State challenges the trial court's decision to suppress evidence—a sample of Christopher Lamar Stewart's blood—seized in a warrantless search following his arrest for driving while intoxicated. The State argues that under the circumstances, a warrant was not required; it concludes the trial court abused its discretion in finding otherwise. For the reasons explained in *State v. Anderson*, No. 09-13-00400-CR, 2014 Tex. App. LEXIS 11151, \*\*26-27 (Tex. App.—Beaumont Oct. 8, 2014, no pet. h.), we affirm the trial court's order.

Background

On an evening in May 2012, Jay Smith, a trooper employed by the Department of Public Safety, responded to a call about a car accident on FM 1484. When he arrived at the scene, he noticed a sedan on its roof in a ditch. The driver of the sedan, Stewart, was being treated in the back of an ambulance by emergency medical responders. Trooper Smith spoke to Stewart; he noticed that Stewart had an injury to his face, a strong odor of alcohol on his breath, and red glassy eyes. Stewart told Trooper Smith that he had been driving, had been drinking, and that "he might have blacked out." Trooper Smith administered the horizontal gaze nystagmus exam, a field sobriety test used by law enforcement. Stewart exhibited six out of six clues on that exam, indicating that Stewart's ability to drive was impaired.

O.D., who indicated that she had been following Stewart in another vehicle, was also on the scene when Trooper Smith arrived. When he spoke to O.D., Trooper Smith noticed that she too had red glassy eyes and that she had the smell of alcohol on her breath. After doing field sobriety tests, Trooper Smith determined that O.D. was intoxicated and arrested her.

On the way to the hospital where Stewart was taken, Trooper Smith learned that Stewart had three prior convictions for driving while intoxicated. At the

hospital, Trooper Smith also learned that the hospital had drawn a sample of Stewart's blood. After Stewart was given the statutory warnings[1] relating to Trooper Smith's request for a voluntary sample, Stewart refused to give a sample of his blood. According to Trooper Smith, "[a]t that point, statutory authorization, the mandatory blood specimen was used."[2] *See* Tex. Transp. Code Ann. § 724.012(b)(3)(B) (West 2011).

After the State charged Stewart with driving while intoxicated, Stewart filed a motion contending his Fourth Amendment rights were violated. Stewart asked the trial court to suppress the test results from the sample Trooper Smith obtained at the hospital. Relying on *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), Stewart argued that absent exigent circumstances, an officer cannot legally draw a suspect's blood without the person's consent or a valid search warrant. Stewart

---

[1]The statutory warning, referred to as the "DIC 24 Mandated Statutory Warning," requires law enforcement officials to warn those arrested for driving while intoxicated of the consequences of refusing to consent to the State's request for a breath or blood specimen and that the officer, if refused the specimen, may apply for a warrant authorizing a specimen to be taken. *See* Tex. Transp. Code Ann. § 724.011 (West 2011), § 724.015 (West Supp. 2014).

[2]Smith's testimony is an apparent reference to section 724.012(b)(3)(B) of the Texas Transportation Code, which provides that the peace officer "shall" obtain a blood or breath specimen if the person being arrested for driving while intoxicated has, on two or more occasions, previously been convicted of or placed on community supervision for driving while intoxicated. Tex. Transp. Code Ann. § 724.012(b)(3)(B) (West 2011).

claimed that no exigent circumstances existed to excuse Trooper Smith's failure to obtain a warrant.

In response, the State argued that section 724.012 of the Texas Transportation Code authorized Trooper Smith to obtain the sample, given Stewart's three prior convictions for driving while intoxicated. *See* Tex. Transp. Code Ann. § 724.012(b)(3)(B). Additionally, the State asserted that exigent circumstances existed to justify the warrantless search. Finally, the State suggests the trial court erred by failing to excuse Smith's decision to conduct a warrantless search even if it violated Smith's Fourth Amendment rights, arguing that Trooper Smith acted in good faith by relying on section 724.012. According to the State, at the time Trooper Smith relied on the statute to conduct the warrantless search at issue, *McNeely* had not been decided. The trial court granted Stewart's motion to suppress. In its findings, the trial court concluded that the "blood specimen taken in this case was an invalid warrantless search and seizure in violation of [Stewart's rights under the] Fourth Amendment[.]"

In four issues, the State contends the trial court abused its discretion by granting Stewart's motion to suppress. In issues one and two, the State suggests that section 724.012 of the Transportation Code authorized Trooper Smith's decision to obtain Stewart's blood sample without a warrant regardless of whether

4

exigent circumstances existed. In issue three, the State contends that it established that exigent circumstances existed with respect to the seizure at issue, allowing the State to conduct a warrantless search. In issue four, the State argues that the trial court abused its discretion by rejecting Trooper Smith's explanation that he was acting under the authority he was given by the Transportation Code requiring that he obtain a sample of Stewart's blood, given Stewart's prior convictions for driving while intoxicated.

## Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). Factual findings that a trial court made in a suppression hearing are reviewed using an abuse of discretion standard. *Id.* Under that standard, the trial court's determination of historical facts based on credibility assessments, when supported by the record, are given almost total deference. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Legal questions and mixed questions of law and fact that do not turn on credibility assessments are reviewed using a *de novo* standard. *Id.*

In suppression hearings, the trial court acts as the exclusive trier of fact and judges the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Acting as the trier of fact, a trial court may choose to believe or

disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing rulings from suppression hearings, we view the evidence in the light most favorable to the ruling, and we are obligated to uphold the ruling when it is supported by the record and is correct under any applicable theory of law. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *Ross*, 32 S.W.3d at 855-56.

## Analysis

The Fourth Amendment to the U.S. Constitution provides protection from unreasonable searches. *See Anderson*, 2014 Tex. App. LEXIS 11151, at *10; *see also* U.S. Const. amend. IV. Only under certain specific exceptions are searches reasonable absent a warrant. *Anderson*, 2014 Tex. App. LEXIS 11151, at **10-11 (citing *Riley v. California*, 134 S.Ct. 2473, 2482 (2014); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003)). It is the State's burden to show that a warrantless search falls within one of the permissible exceptions. *McGee*, 105 S.W.3d at 615.

In this case, the State asserts that section 724.012 of the Transportation Code authorized Trooper Smith's decision, given Stewart's refusal, to obtain a sample of Stewart's blood without a warrant. The State relies on subsection 724.012(b)(3)(B), which provides:

6

(b) A peace officer shall require the taking of a specimen of the person's breath or blood . . . if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

. . . .

(3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

. . . .

(B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code[.]

Tex. Transp. Code Ann. § 724.012(b)(3)(B).

We rejected the same statutory authorization argument the State raises in this case in *Anderson*; nothing in the State's brief indicates that we need to revisit those same arguments here. *Anderson*, 2014 Tex. App. LEXIS 11151, at *26; *see also McNeely*, 133 S.Ct. at 1565-66. For the reasons we explained in *Anderson*, issues one and two are overruled.

In issue three, the State argues that Trooper Smith faced circumstances that required his immediate action, justifying his failure to obtain a warrant. However, the trial court, at the conclusion of the suppression hearing, concluded otherwise, noting "there was insufficient evidence of exigent or extenuating circumstances

7

that would have prevented [Trooper] Smith from obtaining a valid blood search warrant signed by a judge."

In reviewing the trial court's conclusion that exigent circumstances did not exist to justify a warrantless search, we examine the "totality of the circumstances," and then analyze the facts on a case-by-case basis. *See McNeely*, 133 S.Ct. at 1556, 1558-59, 1563. "We apply an objective standard of reasonableness to determine whether a warrantless search was justified, and we take into account the facts and circumstances known to the police at the time of the warrantless search." *Anderson*, 2014 Tex. App. LEXIS 11151, at *31 (citing *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998)).

Here, Trooper Smith was the only officer on the scene of a one-vehicle accident that occurred around 11:15 p.m. Although he suspected Stewart of drinking and driving, he was then occupied at the scene by another driver who he also suspected had been driving while intoxicated. Although that driver, O.D., initially consented to Trooper Smith's request for a voluntary blood sample, she later withdrew her consent.

Around 12:30 a.m., Trooper Smith contacted the on-duty assistant district attorney at the jail about contacting a judge to obtain a warrant for O.D's blood. Trooper Smith testified that the assistant district attorney told him that a judge was

8

not available; however, the trial court, as the finder of fact, was free to reject Trooper Smith's testimony that he was told a judge was not available. The trial court could have also reasonably concluded that even if the officer was told that no judge was available for O.D.'s case, a case involving no prior driving while intoxicated convictions, that did not mean that a judge would not necessarily have been available under the circumstances involving Stewart's case.

Stewart refused Trooper Smith's request for a blood sample around 12:51 a.m. Trooper Smith did not attempt to contact the assistant district attorney again to request assistance in finding a judge to issue a warrant for Stewart's blood. At 1:30 a.m., Trooper Smith decided to obtain a mandatory blood sample because he believed the Transportation Code authorized him to do so without a warrant, given Stewart's three prior convictions. There was no evidence in the record that compelled the trial court to find that no judge would have been available had the circumstances of Stewart's case been related to the assistant district attorney on call that night.

Based upon the testimony and evidence submitted at the suppression hearing, the trial court could have reasonably concluded that Trooper Smith decided to obtain the sample without a warrant because he thought he could do so under the Transportation Code. Trooper Smith conceded that he did not attempt to

obtain a search warrant for Stewart's blood. Viewing the evidence in the light most favorable to the trial court's ruling, and considering the trial court's right to weigh and decide questions about the credibility of the evidence before it, and the amount of time that Trooper Smith had to seek a warrant authorizing him to obtain a sample of Stewart's blood, the trial court's decision to reject the State's claim that no warrant was needed is a matter the trial court resolved in a reasonable manner. We overrule the State's third issue.

In its fourth issue, the State argues the trial court failed to apply a good faith exception to the rule requiring it to exclude the evidence of an illegal search by granting Stewart's motion. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). We rejected this same argument in *Anderson*, and we explained that "[t]he stated exception in article 38.23(b) expressly applies only when a warrant has been issued by a neutral magistrate and the officer relied upon the warrant." *Anderson*, 2014 Tex. App. LEXIS 11151, at *37. Because no warrant issued in Stewart's case, the statutory exception found in article 38.23(b) does not apply. *Id*. We overrule the State's fourth issue.

Having overruled all of the State's issues, we affirm the trial court's order.

AFFIRMED.

_____
HOLLIS HORTON
Justice


Submitted on June 12, 2014
Opinion Delivered November 12, 2014
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.